IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STATE OF OREGON,

        Plaintiff,

                                         3:15-CV-2006-PK

                                         FINDINGS AND
v.                                        RECOMMENDATION

GENERAL NUTRITION CORPORATION,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff the State of Oregon (the "State") filed this action against defendant General

Nutrition Corporation ("GNC") in the Multnomah County Circuit Court on October 22, 2015.

By and through its complaint, the State alleges that GNC improperly and willfully represented

that various products GNC sold in Oregon were "lawful dietary supplements" notwithstanding

GNC's actual or constructive knowledge that these products contained N-nicotinoyl-GABA

Page 1 - FINDINGS AND RECOMMENDATION

("picamilon") and/or ß-Methylphenethylamine ("BMPEA"), neither of which (according to the

State) is or may lawfully be included in a dietary supplement under federal law.  Arising out of

that conduct, the State alleges GNC's liability under Oregon's Unlawful Trade Practices Act (the

"UTPA") in four claims comprising a total of seventeen counts.  Specifically, the State alleges

GNC's liability under Or. Rev. Stat. 646.608(1)(e) (an unlawful trade practice to represent that

goods have approval, characteristics, uses, benefits, or qualities that they do not in fact have) in

six counts, under Or. Rev. Stat. 646.608(1)(g) (an unlawful trade practice to represent that a

product is of a particular standard, quality, or grade if it is of another) in four counts, under Or.

Rev. Stat. 646.608 (an unlawful trade practice to cause likelihood of confusion or of

misunderstanding as to the approval or certification of goods) in four counts, and under Or. Rev.

Stat. 646.607(1) (an unlawful trade practice to engage in any unconscionable tactic in connection

with the sale of goods) in three counts.  The State's complaint expressly references the federal

Food, Drug and Cosmetic Act (the "FDCA" or the "Act"), 21 U.S.C. § 301 *et seq.*, in particular

21 U.S.C. § 321(ff) (defining the term "dietary supplement" for FDCA purposes), in support of

its allegation that picamilon and BMPEA may not lawfully be included in a dietary supplement

under federal law.  *See* Complaint, ¶¶ 15, 19, 20, 28, 34, 37.

On October 23, 2015, GNC removed the State's action to this court on the purported

grounds of both federal-question and diversity jurisdiction.  Briefly, it is GNC's theory that

because the State references federal law in support of the proposition that neither picamilon nor

BMPEA may lawfully be included in a dietary supplement, the State's causes of action must

necessarily arise under the laws of the United States, giving rise to federal-question jurisdiction,

and that because the State has no authority to enforce the FDCA, this action is not brought by the

State but rather by the State's Attorney General in her personal capacity only, which (together with the amount in controversy and the fact that GNC is a Pennsylvania corporation headquartered in Pennsylvania) gives rise to diversity jurisdiction (which cannot exist where a state is a party). The State challenges GNC's theory of both federal-question and diversity jurisdiction.

Now before the court is the State's motion (#6) for remand of this action to the Multnomah County court for lack of federal subject-matter jurisdiction. I have considered the motion, oral argument on behalf of the parties, and all of the papers and pleadings on file. For the reasons set forth below, the State's motion for remand should be granted, and this action should be remanded to the Multnomah County court where it was originally filed.

## LEGAL STANDARD

Following a defendant or other party's removal of an action from state to federal court, a party opposed to such removal may seek to have the removed case remanded to state court if the district court lacks subject-matter jurisdiction over the action notwithstanding its removal, or if the removing party's removal procedure was defective. *See* 28 U.S.C. § 1447(c). If at any time prior to final judgment it appears that a federal court lacks subject-matter jurisdiction over a removed case, the court must remand the action to state court. *See* 28 U.S.C. § 1447(c). By contrast, where a party seeks remand on the basis of defects in removal procedure, the party opposed to removal must move for remand within thirty days following removal. *See id.*

The removal statutes are generally construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *see also, e.g., Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("We strictly construe the removal

Page 3 - FINDINGS AND RECOMMENDATION

statute against removal jurisdiction") (citations omitted). Cases first filed in state court and then removed to federal court are generally subject to a "strong presumption" against finding removal jurisdiction. *See Gaus*, 980 F.2d at 566; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-292 (1938). The burden of establishing federal subject-matter jurisdiction for purposes of removal is on the party seeking removal, *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004), *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006), and factual questions regarding the basis for removal are generally to be resolved in favor of remanding the case to state court, *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

In considering a post-removal challenge to federal subject-matter jurisdiction, the court assumes the truth of the allegations in the complaint and that a jury will ultimately return a verdict in the plaintiff's favor on all claims alleged therein. *See, e.g., Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). In addition, the court may consider the contents of the defendant's removal petition, relevant "summary-judgment-type evidence" proffered at the time of removal, *Valdez*, 372 F.3d at 1117, and/or supplemental evidence regarding the jurisdictional facts as of the time of removal where such facts are proffered at the time federal subject-matter jurisdiction is challenged but can properly be construed as amendments to the notice of removal, *see Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002). It is well established that "[c]onclusory allegations" or allegations based on "information and belief" are insufficient to satisfy the defendant's burden to establish federal jurisdiction. *Matheson*, 319 F.3d at 1090-1091; *Valdez*, 372 at 1117. If, after consideration of all material allegations and evidence, "doubt regarding the right to removal exists, [the] case should

be remanded to state court." *Matheson*, 319 F.3d at 1090.

## FACTUAL BACKGROUND[1]

Picamilon is a synthetic chemical designed to cross the blood-brain barrier which is a prescription neurological medication in some countries but has not been approved for use in the United States with or without a prescription. *See* Complaint, Introduction. BMPEA is a positional isomer of amphetamine, with which it shares some properties, that is banned by the World Anti-Doping Organization. *See id.* Neither picamilon nor BMPEA may lawfully be included in dietary supplements in the United States. *See* 21 U.S.C. § 321(ff). Although GNC (which both manufactures and sells its own dietary supplements and sells third-party dietary supplements, *see* Complaint, ¶¶ 2, 12-16) does not manufacture any products containing picamilon or BMPEA, *see id.*, ¶¶ 21, 35, until approximately September 21, 2015, GNC sold third-party products labeled as containing picamilon, *see id.*, ¶¶ 30-32, third-party products labeled as containing BMPEA, *see id.*, ¶¶ 59-60, and third-party products not labeled as containing BMPEA but which nevertheless contained significant quantities of BMPEA, *see id.*, ¶¶ 56-58 and 60. At all material times, GNC had actual knowledge that picamilon and BMPEA could not lawfully be included as ingredients in a dietary supplement sold in the United States, and actual or constructive knowledge that the products it sold that were labeled as containing "acacia rigidula" were at significant risk of containing BMPEA. *See id.*, ¶¶ 12-16, 22-24, 25-28, 31, 36-41, 42, 46-50.

---

[1] Except as otherwise indicated, the following recital of facts reflects my presumption that all of the facts alleged in the State's complaint are true and accurate.

## ANALYSIS

It is well settled that the propriety of removal and the question of federal jurisdiction following removal are to be determined on the basis of the pleadings filed in state court as of the moment removal was effected. *See, e.g., Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1211 (9th Cir. 1998), *citing Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 43 (1998), *Ultramar America Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990). Pursuant to 28 U.S.C. § 1447(c), the district court must remand a removed case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c).

Here, GNC's theories of federal subject-matter jurisdiction (federal question and diversity) both depend necessarily on the proposition that a substantial, contested federal question capable of resolution by this court is necessarily raised by the State's express reliance on the FDCA definition of "dietary supplement" in support of its position that GNC's complained-of conduct was unlawful for purposes of its UTPA claims (as noted above, it is GNC's position that such reliance directly gives rise to federal-question jurisdiction, and additionally that such reliance renders the State's claims in this action *de facto* efforts to enforce the FDCA, which states lack authority to do, such that the real plaintiff in interest must necessarily be Oregon's Secretary of State, giving rise to diversity jurisdiction). Generally, the district courts may not assert federal-question jurisdiction over an action in which no federal claim is asserted:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar* [*Inc. v. Williams*], 482 U.S. [386,] 392[ (1987)]. . . . The well-pleaded complaint rule means that "a case may not be removed to federal

court on the basis of a federal defense, including the defense of pre-emption, even
if the defense is anticipated in the plaintiff's complaint, and even if both parties
concede that the federal defense is the only question truly at issue." *Caterpillar*,
482 U.S. at 393.

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir.

2014). "As a general rule, absent diversity jurisdiction, a case will not be removable if the

complaint does not affirmatively allege a federal claim." *Id.*, *quoting Beneficial Nat'l Bank v.*

*Anderson*, 539 U.S. 1, 6 (2003).

Notwithstanding the foregoing, "a case may arise under federal law 'where the vindication

of a right under state law necessarily turn[s] on some construction of federal law,'" *Merrell Dow*

*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808-809 (1986), *quoting Franchise Tax*

*Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983), although "this statement

must be read with caution" in that the presence of a federal issue upon the resolution of which the

asserted state-law cause of action depends does not always give rise to federal-question

jurisdiction, *id.* at 809; indeed, the court quoted with approval Justice Holmes' observation that in

"[t]he 'vast majority' of cases" of federal-question jurisdiction, a "'suit arises under the law that

creates the cause of action,'" *id.* at 808, *quoting Franchise Tax Board*, 463 U.S. at 8-9,

*quoting American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). The

*Merrell Dow* court specifically held that "when Congress has determined that there should be no

private, federal cause of action for the violation" of a federal statute, "a complaint alleging a

violation of [that] federal statute as an element of a state cause of action. . . does not state a claim

'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817, *quoting* 28

U.S.C. § 1331. Applying that rule to an action stating state-law claims premised in part on the

defendant's violation of FDCA branding rules, and plausibly assuming that there was no federal

private cause of action under the FDCA for such a violation,[2] the court found that there was no

federal-question jurisdiction over the action. *See id.*[3]

GNC takes the position that *Merrell Dow* is not controlling here, apparently because

*Merrell Dow* specifically addressed FDCA branding rules, which are not implicated by the State's

claims in this action. However, the *Merrell Dow* court's reasoning was neither expressly nor

impliedly limited to the context of state-law claims implicating FDCA branding rules, but rather

applies on its face whenever the implicated federal statute does not give rise to any private right

of action. *See id.* When questioned on this point at oral argument in connection with the State's

motion, counsel for GNC suggested that the reasoning of *Merrell Dow* might be inapplicable

---

[2] Although the court framed its finding that there was no private right of action to enforce
the FDCA as an *arguendo* assumption, *see Merrell Dow*, 478 U.S. at 810, it nevertheless
provided strong evidence that its assumption was accurate, *see id.* at 810-811. Moreover, as
discussed below, the Ninth Circuit has more recently affirmed that there is no private right to
bring an action to enforce the FDCA.

[3] In 2009, the Supreme Court expanded on its discussion of the FDCA in *Merrell Dow* in
support of its rejection of the argument that the FDCA could be effective to displace state-law
causes of action, concluding that the provisions of the FDCA do not displace state-law causes of
action and do not give rise to any private right of action:

> Congress enacted the FDCA to bolster consumer protection against harmful
> products. *See Kordel v. United States*, 335 U.S. 345, 349, 69 S. Ct. 106, 93 L. Ed.
> 52 (1948); *United States v. Sullivan*, 332 U.S. 689, 696, 68 S. Ct. 331, 92 L. Ed.
> 297 (1948). Congress did not provide a federal remedy for consumers harmed by
> unsafe or ineffective drugs in the 1938 statute or in any subsequent amendment.
> Evidently, it determined that widely available state rights of action provided
> appropriate relief for injured consumers. It may also have recognized that
> state-law remedies further consumer protection by motivating manufacturers to
> produce safe and effective drugs and to give adequate warnings.

*Wyeth v. Levine*, 555 U.S. 555, 574 (2009) (footnote omitted).

Page 8 - FINDINGS AND RECOMMENDATION

here because while 21 U.S.C. § 337(a) of the FDCA expressly provides that only the federal government may enforce or restrain violations within its scope, the FDCA provisions governing dietary supplements, generally codified at 21 U.S.C. §§ 341-350l-1, are in some sense outside the scope of Section 337(a). GNC's position is not persuasive.

In fact, Section 337(a) provides, in relevant part, that "[e]xcept as provided in subsection (b) of this section [337] [the provisions of which are not at issue here], all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 1337(a). Moreover, the "chapter" referenced in Section 337(a) denotes Chapter 9 of Title 21 of the United States Code, or the entirety of the FDCA. *See* 21 U.S.C. §§ 301-399f. Section 337(a) thus clearly establishes Congressional intent not to provide for any private right of action to enforce or restrain violations of the dietary supplement provisions of the FDCA, or indeed any other provision of the FDCA not expressly discussed in 21 U.S.C. § 337(b). *See* 21 U.S.C. § 337(a); *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013) ("private enforcement of the [FDCA] is barred. . . .").

Even if there were some doubt as to whether *Merrell Dow* were controlling, as GNC suggests, *de novo* analysis of the issue yields the same result. As GNC notes, in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the Supreme Court clarified the framework for determining whether "federal-question jurisdiction will lie over state-law claims that implicate . . . federal issues." *Grable*, 545 U.S. at 312. The *Grable* court held that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313 (citations omitted). The court further held that a "federal issue will ultimately qualify for a

Page 9 - FINDINGS AND RECOMMENDATION

federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-314. Recently, the Supreme Court articulated the *Grable* framework still more concisely as follows:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013), *quoting Grable*, 545 U.S. at 313-314.

For purposes of the *Grable/Gunn* framework, a federal issue is "necessarily raised" by a state-law claim if the claim cannot be resolved without consideration of the issue. *See id.* at 1065. To raise an "actually disputed" federal issue, a state-law claim must "really and substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable*, 545 U.S. at 313 (alterations original; quotation marks omitted), *quoting Shulthis v. McDougal*, 225 U.S. 561, 569 (1912). For a federal issue to be "substantial," there must be "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," one that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312-313. Moreover, the substantiality of an issue is to be determined not by reference to the importance of the issue for resolution of the parties' dispute, but rather solely from the perspective of the integrity of the federal system itself. *See Gunn*, 133 S. Ct. at 1066. Finally, to determine whether an issue is "capable of resolution" in federal court without disrupting the balance between federal and state courts requires the courts

Page 10 - FINDINGS AND RECOMMENDATION

to consider whether Congress intended to displace state-law causes of action and whether the states have a legitimate interest in deciding claims that may depend in part on the federal issue. *See id.* at 1068.

Analysis of the claims at issue here under the *Grable/Gunn* framework establishes that the State's claims do not give rise to federal-question jurisdiction. As a preliminary matter, I agree with GNC that the first two elements of the framework are satisfied here. Specifically, the State's UTPA claims rely on the proposition that picamilon and BMPEA are not lawful dietary supplements or ingredients of dietary supplements, and the State supports that proposition by reference to 21 U.S.C. § 321(ff), which defines that term for FDCA purposes. Because the State relies on the federal definition to establish the "unlawfulness" element of its UTPA claims, the UTPA claims cannot be resolved without consideration of the federal definition, such that the definition is necessarily raised, *see Gunn*, 133 S. Ct. at 1065; because GNC intends to argue that in fact picamilon and BMPEA were not at the material times unlawful dietary supplements for FDCA purposes, there is a controversy regarding both the construction and the effect of the federal definition, such that the necessarily raised federal issue is also actually disputed, *see Grable*, 545 U.S. at 313.

Notwithstanding the foregoing, I agree with the State that GNC cannot satisfy either the "substantiality" or the "federal-state balance" elements of the framework. The insurmountable obstacle GNC faces are the facts that Congress did not provide for any private right of action to enforce the implicated provisions of the FDCA, and that Congress did not intend to displace the "widely available state rights of action [that] provided appropriate relief for injured consumers"

in the absence of any such federal right of action.[4]  *Wyeth*, 555 U.S. at 574.  In light of Congress'
election to permit state-law rights of action to remain in place, there can be no cognizable
"serious federal interest in claiming the advantages thought to be inherent in a federal forum,"
nor can it seriously be argued that permitting this case to go forward in state court would in any
sense disrupt the balance between federal and state courts.[5]  *See Grable*, 545 U.S. at 312-313;
*See Gunn*, 133 S. Ct. at 1066, 1068; *see also Or. ex rel. Kroger v. Johnson & Johnson*, 832 F.
Supp. 2d 1250, 1255 (D. Or. 2011) (reaching the same conclusion as to the "substantiality" or the
"federal-state balance" elements of the framework on analogous facts).  It follows that the State's
UTPA claims do not give rise to federal-question jurisdiction.

 Moreover, the foregoing analysis further establishes that the State's UTPA claims do not
constitute an impermissible effort to enforce the FDCA, such that no grounds exist for
questioning whether the State has authority to pursue its claims herein in its own behalf or for
concluding that the Oregon Attorney General is pursuing the claims asserted herein in her
personal capacity.  In consequence, this court may not properly exercise diversity jurisdiction

---

 [4] For the same reasons, GNC's alternative argument that federal-question jurisdiction
arises here because the State's UTPA claims are completely preempted by the FDCA is also
patently incorrect as a matter of law; Congressional intent not to displace state-law remedies is
not consistent with Congressional intent to completely preempt state-law remedies.

 [5] GNC argues that this court should reach a different result in its analysis of the
"substantiality" or the "federal-state balance" elements of the framework, because here the federal
question at issue has not yet been resolved by any court, including any federal court; GNC takes
the position that, because the federal question at issue is entirely novel, it must be resolved by a
federal court before its implicature in a state-law claim can fail to give rise to federal-question
jurisdiction.  However, the *Merrell Dow* court considered and expressly rejected this very
argument, holding that "[t]he novelty of an FDCA issue is not sufficient to give it status as a
federal cause of action; nor should it be sufficient to give a state-based FDCA claim status as a
jurisdiction-triggering federal question."  *Merrell Dow*, 478 U.S. at 816-817.

Page 12 - FINDINGS AND RECOMMENDATION

over the State's claims herein, *see Wyeth*, 555 U.S. at 574, *Johnson & Johnson*, 832 F. Supp. 2d at 1258-1260 (and, in any event, because GNC did not remove this action on the purported basis of diversity jurisdiction and cannot now timely amend its removal papers to assert diversity jurisdiction, it may not now defeat the State's motion for remand on the grounds that this court may properly exercise subject-matter jurisdiction on that basis, *see ARCO Envtl. Remediation, L.L.C. v. Department of Health & Envtl. Quality*, 213 F.3d 1108 (9th Cir. 2000)).

## CONCLUSION

For the reasons set forth above, I recommend that the State's motion (#6) for remand of this action to state court be granted. An order of remand should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 30th day of March, 2016.

Honorable Paul Papak
United States Magistrate Judge